IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY CHISANO,<br><br>    Plaintiff and counterclaim defendant,<br><br>vs.<br><br>JOHN NEWTON,<br><br>    Defendant and counterclaimant. | 4:23-CV-3133<br><br>MEMORANDUM AND ORDER |

    The plaintiff, Anthony Chisano, has moved for a preliminary injunction requiring defendant John Newton and his counsel to hand over files allegedly belonging to Air Exec, Inc. Filing 58. The Court will deny Chisano's motion.

## I. BACKGROUND

    The dispute between these parties is about the sale of Air Exec, a charter air carrier. *See* filing 17. According to Chisano's operative complaint, Newton owned Air Exec and Chisano agreed to buy it. Filing 17 at 2. Newton, formerly Director of Operations for Air Exec, would remain with the company in that role. Filing 17 at 2. The deal was, according to Chisano, consummated with a December 31, 2021 sale contract and a separate agreement to transfer Newton's shares of Air Exec stock to Chisano. Filing 17 at 2.

### 1. CHISANO'S CLAIMS

    Chisano took over Air Exec on January 1, 2022. Filing 17 at 2. Chisano alleges that after he took over, the company received notices from the FAA regarding various regulatory shortcomings: failing to perform and document

maintenance, name a chief pilot, or implement a drug testing protocol for employees. Filing 17 at 4. Chisano alleges that Newton assured him he would deal with it, but in fact had been concealing problems before and after the sale, which led the FAA to ground Air Exec aircraft and made it impossible for Air Exec to continue operating. Filing 17 at 4-5.

This, according to Chisano, supports claims for breach of fiduciary duty, fraudulent concealment, securities fraud, tortious interference, and breach of an implied covenant of good faith and fair dealing. Filing 17 at 3-8, 11. Chisano also alleges that in June 2023, Newton unlawfully accessed an airport hanger leased by Chisano and conspired with someone named Laura Chisano to convert items of personal property belonging to Chisano, some of which had been leased to Air Exec. Filing 17 at 9-10.

The operative complaint prays for money damages, including attorney's fees and interest. Filing 17 at 10-11. The complaint also seeks "any such further relief as this Court deems just and equitable, including rescission of the Sale Contract, as well as other applicable injunctive relief." Filing 17 at 10.

## 2. NEWTON'S COUNTERCLAIMS

Newton generally denies Chisano's allegations. *See* filing 49. In Newton's telling, Chisano was Air Exec's FAA contact, and was fully informed about everything the FAA had sent to Air Exec. Filing 49 at 2-3. Newton also denies that Chisano took ownership of Air Exec: Instead, Newton alleges that he was to keep possession of his Air Exec stock—a "security interest in the stock through a possessory interest to secure payments"—until Chisano made all the payments required by their sale agreement. Filing 49 at 4, 8. And Chisano, according to Newton, didn't make the payments. Filing 49 at 4, 8-10.

That, according to Newton, states a counterclaim for breach of contract. Filing 49 at 8-10. It also entitled Newton (or so he thought at the time, in June

2023) to foreclose on the Air Exec stock and exercise authority as the sole shareholder to name himself "the sole Director, President, Vice-President, Secretary, and Treasurer of Air Exec." Filing 49 at 4. Newton also alleges that he's a creditor of Air Exec as the sole member of Newton Flying Services, LLC, and that Chisano has disposed of Air Exec assets at below market value in self-dealing transactions, supporting a counterclaim for fraudulent transfer. Filing 49 at 6-8. Chisano, of course, denies those claims. Filing 50.

### 3. THE IOWA LITIGATION

Chisano and Air Exec are litigating in Iowa state court as well. *See* filing 59-2 at 3-15. In that case—*Air Exec, Inc. v. Anthony Chisano*, No. EQEQ006811—Newton and Chisano asked an Iowa district court to determine who the corporate officers of Air Exec are. Filing 59-2 at 3; *see generally* Iowa Code Ann. § 490.749 (West). To answer that question, however, the court found it would have to dig into the underlying dispute about stock ownership and alleged default under the sale agreement. Filing 59-2 at 10.

The court found that it could "not find a default on the evidence presented." Filing 59-2 at 14. As a result, "[w]ithout a default, Newton could not have pursued strict foreclosure to regain his shares. It follows that Newton did not have authority to vote in June to remove officers and directors and replace Chisano. Chisano thus remains president of Air Exec." Filing 59-2 at 14. So, the Court found that Chisano was the sole shareholder of Air Exec, and ordered Newton to issue a stock certificate transferring ownership of Air Exec to Chisano. Filing 59-2 at 14-15.

### 4. AIR EXEC FILES

Awkwardly, Newton actually filed the Iowa case purporting to act on behalf of Air Exec, and Air Exec's counsel in that case is Newton's in this one.

- 3 -

*See* filing 58 at 1; filing 59-2 at 3, 32-34. And Newton's counsel evidently was representing Air Exec in other matters as well (although they have since agreed to withdraw from those). *See* filing 59-2 at 32-32. After the Iowa court ruled, Chisano's counsel emailed Newton's counsel requesting transfer of any and all files relating to Air Exec, "includ[ing], but [] not limited to, all paper files, documents, electronic files, and other data." Filing 59-2 at 34.

Those files are the subject of the currently pending motion. *See* filing 58. Specifically, Chisano moves for an order "ordering Newton to immediately return all documents, including, but not limited to, attorney files, communications, notes, memoranda, and/or other documentations, belonging to Air Exec, Inc., which are in the possession and/or control of Newton and/or Newton's agents and representatives." Filing 58 at 4.[1]

## II. DISCUSSION

To make one thing clear from the outset: This is <u>not</u> a discovery motion. If Chisano wants documents disclosed for purposes of discovery and believes they're being wrongfully withheld, he can file an appropriate discovery motion and take the matter up with the Magistrate Judge. The pending motion, however, is for a preliminary injunction, and the Court will treat it as such.

In an ordinary case, when deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public

---

[1] The Court assumes for the sake of argument (despite unanswered questions) that Chisano has standing to seek that relief—even though it's based in Air Exec's interest in the files, and Air Exec isn't actually a party here.

interest. *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). But this is not an ordinary case.

### 1. CONNECTION BETWEEN CLAIMS AND INJUNCTIVE RELIEF

That's because as a preliminary matter, the Court must evaluate the extent to which Chisano's substantive claims even support the injunctive relief he requests. A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And that means establishing a causal relationship between the injury claimed in the plaintiff's motion and the conduct asserted in the complaint. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Pavek v. Simon*, 467 F. Supp. 3d 718, 763 (D. Minn. 2020); *see Hale v. Wood*, 89 F.3d 840 (8th Cir. 1996). A preliminary injunction that bears no relationship to the claims and events alleged in the complaint would be unworkable, as the issues giving rise to that injunction would not be addressed, let alone resolved, at trial. *Zhou v. Int'l Bus. Machs. Corp.*, 167 F. Supp. 3d 1008, 1011 (N.D. Iowa 2016).

Stated another way, a plaintiff can't ask to be given relief, *before* prevailing on his claims, that he wouldn't even be entitled to *after* prevailing on his claims. The purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits," *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)—not to resolve any and all disagreements the parties may have, whether or not they're presented by the pleadings.

And here, the connection between Chisano's claims and his request for injunctive relief is very hard to find. Which of Chisano's claims, if proved,

would be remedied by possession of Air Exec files? Perhaps there's something in the alleged breach of fiduciary duty—but if there is, Chisano didn't explain what. Instead, Chisano asserts that this lawsuit

> concerns allegations related to certain actions taken by Newton both during and after the time he was the sole shareholder of Air Exec. Such actions amount to Newton's breach of his fiduciary duties owed to Chisano and Air Exec, fraudulent concealment, securities fraud, tortious interference and conversion. Such causes of action are directly asserted in the lawsuit. Such allegations will be evidenced and/or supported by the documents contained within Air Exec's files. . . .

Filing 70 at 2 (citation omitted). But again, Fed. R. Civ. P. 65 isn't a discovery rule. The questions for the Court are (1) If the plaintiff prevails, can he get what he's asking for, and (2) has he made such a compelling case (considering the *Dataphase* factors) that he should be allowed to get some of it early? Nothing before the Court right now answers those questions in Chisano's favor.

### 2. MANDATORY INJUNCTIVE RELIEF

The same principles suggest another problem with Chisano's motion: The nature of the relief he's requesting, which is to *compel* action, not enjoin it. As previously noted, the primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir. 1989); *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). Where the status quo is a condition of rest, and continuing to rest will

cause irreparable harm, the Court *may* enter a mandatory preliminary injunction. See *Ferry-Morse,* 729 F.2d at 593.

But courts have applied more stringent requirements to the granting of a mandatory preliminary injunction than a prohibitory preliminary injunction. *Id.*; *cf. Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 486 (8th Cir. 1993). Because a mandatory injunction requires the Court to command the defendant to take a particular action, mandatory preliminary writs are ordinarily viewed cautiously and issued sparingly. *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir. 1997). Generally speaking, ordering a party "to take affirmative action . . . goes beyond the purpose of a *preliminary* injunction." *Sanborn Mfg.,* 997 F.2d at 490 (emphasis in original).

The nature of the relief requested gives the Court pause here. Were this a discovery motion, there are well-established rules and procedures for resolving, say, privilege questions arising out disclosing documents. Chisano seems to want to have his cake and eat it on that point—while he consistently claims he's not seeking discovery, *see* filing 70, he also suggests that if privilege is asserted the Court should demand a privilege log detailing those objections, *see* filing 58, akin to discovery rules. The mandatory nature of the injunction would, it seems, require the Court to invent an *ad hoc* procedure for disclosure.

Nor can the Court see how to disentangle that procedure from the discovery process. After all, the relationship between the files and this litigation that Chisano identifies is that his allegations "will be evidenced and/or supported by the documents contained within Air Exec's files. . . ." Filing 70 at 2. But, he says, the reason this *isn't* just a discovery request is that Chisano and Air Exec want *exclusive* possession of the documents—denying them, apparently, to Newton, based on their own privilege claims. *See* filing 70 at 2-3. Presumably, even if the Court ordered the files transferred to Chisano's

exclusive possession, the first thing Newton would do is demand copies back, because they apparently contain evidence relevant to the parties' claims.

How to assert privilege over files previously in the possession of an adverse party is anybody's guess at this point. The Court is simply not persuaded that prudentially, it's a good idea to initiate some kind of Alphonse-and-Gaston sequence of discovery requests and privilege logs, under the discovery rules or whatever sort of *ad hoc* procedure the Court the would be required to invent under Rule 65.

### 3. *DATAPHASE* FACTORS

But even assuming that some of Chisano's requests are related to his underlying claims and that mandatory relief would be doable, the *Dataphase* factors preclude relief. The Court notes, to begin with, that its discussion of the *Dataphase* factors is limited by Chisano's almost complete failure to address them or even cite them in his motion, *see* filing 58, despite the fact that the Court is required by extremely well-established law to consider them before awarding preliminary injunctive relief. *See Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (citing *Winter*, 555 U.S. at 20). The only factor even touched on in Chisano's initial motion is a one-sentence conclusory assertion about irreparable harm. Filing 58 at 4. He finally cites the *Dataphase* factors in his reply brief and adds an additional paragraph of conclusory assertions, *see* filing 70 at 3-4, but that's both too little and too late, *see* NECivR 7.1(c)(3).[2]

---

[2] And while we're talking about the Local Rules: Newton suggests that the Court should treat Chisano's motion as having been abandoned because he didn't file a separate supporting brief, as NECivR 7.1(a)(1)(A) requires. Filing 66 at 6. But there's some irony to that, because Newton's argument is found in a brief filed in support of some kind of separate "opposition" to Chisano's motion. Filing 65; filing 66. That's *also* contrary to the Local Rules. *See* NECivR

(a) Likelihood of Success on the Merits

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

There are three problems that make it impossible for the Court to find Chisano has established a likelihood of success on the merits. The first, as explained above, is that the Court cannot determine what merits Chisano needs a likelihood of succeeding on, because there's no clear connection between the claims he pled and the relief he's seeking now. Second, Chisano's argument for his likelihood of success on the merits consists of a one-sentence assertion in his reply brief—"Chisano is likely to succeed on the merits of his lawsuit," filing 70 at 4—with no supporting explanation or authority. And third, Chisano has provided no *evidence* supporting the merits of his claims.

The evidentiary support submitted with Chisano's motion is devoted to establishing his right to possess Air Exec documents, not his likelihood of succeeding on his underlying claims. *See* filing 59. And neither party requested a hearing or the opportunity to present oral testimony. *See* NECivR 7.1(e)-(f). It is true that a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a

---

7.1(b)(1)(A). And it's not the first time that Newton's counsel has made that mistake. *See* filing 40; filing 41. It suffices to say that (1) the Court will resolve this motion on the merits, and (2) both sides should pay more attention to the Court's rules.

trial on the merits. *Olin Water Servs. v. Midland Research Labs., Inc.*, 774 F.2d 303, 308 (8th Cir. 1985). But the Court cannot issue a preliminary injunction without *some* evidence to support the necessary findings of fact. *See Mid-Am. Real Est. Co. v. Iowa Realty Co.*, 406 F.3d 969, 977 (8th Cir. 2005); *Guar. Trust Co. of New York v. Henwood*, 86 F.2d 347, 354 (8th Cir. 1936) (there must be "competent, material, and credible evidence[,]" because "[f]acts, not conclusions or opinions, must be stated upon which the court may base its judgment, according to established principles governing equitable relief by injunction").

(b) Irreparable Harm

Similarly, Chisano hasn't met his burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *see Minn. Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011).

To be fair, Chisano has a bit more on this point, but it's still not enough. It's difficult to determine how Chisano is harmed by being deprived of Air Exec documents when the content of those documents isn't particularly clear to the Court. And while Chisano claims he's being harmed by an alleged breach of attorney-client privilege, *see* filing 70 at 4, the Court is in no position at this point to resolve those unarticulated privilege claims.

Nor, the Court notes, is it clear how the Court could unscramble that particular egg, given that the files sought are—and have been—at least accessible to Newton and his counsel for some time. Chisano's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction,"

*Winter*, 555 U.S. at 22, implies that an injunction shouldn't issue where the allegedly-irreparable injury would occur despite the injunction. Accordingly, "[i]t is black letter law that an injunction will not issue when it would be ineffectual." *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1123 (5th Cir. 1985). And while the Court *might* be capable of compelling the transfer of Air Exec files to Chisano, it's hard to see how the Court can repair a purported breach of privilege that, if it occurred, already seems accomplished.

### (c) Remaining *Dataphase* Factors

For the sake of completeness, the Court also finds that the remaining *Dataphase* factors don't help Chisano, although they don't hurt either. There's not much in Newton's brief to suggest that he would be disproportionately harmed by any injunction, so the balance of harms doesn't really tip either way. And Chisano's claimed public interest—"protecting attorney-client privilege," filing 70 at 4—is neutral. There is authority suggesting that privilege claims can be relevant to a public interest determination. *E.g.*, *United States v. Ritchey*, 605 F. Supp. 3d 891, 904 (S.D. Miss. 2022); *Pfeiffer v. Ajamie PLLC*, 469 F. Supp. 3d 752, 765 (S.D. Tex. 2019); *Council on Am.-Islamic Rels. v. Gaubatz,* 667 F. Supp. 2d 67, 79-80 (D.D.C. 2009). But both sides here apparently have privilege claims. *See* filing 66 at 4; filing 70 at 3-5. And as already explained, the Court is in no position to resolve those claims now.

### III. CONCLUSION

To summarize: The Court denies Chisano's motion because there's no connection between his claims and request for injunctive relief, he hasn't met the demanding standard for a mandatory preliminary injunction, and he hasn't made the showing required under the *Dataphase* factors.

It's obvious that the parties have an ongoing dispute over files and representation.[3] It's less obvious where to resolve it—perhaps in Iowa where related issues have been litigated, or perhaps with the Magistrate Judge in the context of discovery. But it won't be settled by a preliminary injunction.

IT IS ORDERED that Chisano's motion for preliminary injunction (filing 58) is denied.

Dated this 9th day of May, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

---

[3] As an aside, the Court notes that Newton's counsel may at some point be required to carefully consider—if they haven't already—whether they face a conflict of interest under these circumstances. *Cf. Detter v. Schreiber*, 610 N.W.2d 13, 18 (Neb. 2000), *overruled on other grounds by Heckman v. Marchio*, 894 N.W.2d 296 (Neb. 2017). The Magistrate Judge might have an easier time resolving the parties' competing and apparently inevitable privilege claims were they presented as third-party discovery—and Newton's current counsel might find it easier to protect themselves from ethical dilemmas.